# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Nick McClure, Individually and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiffs, | ) Case No. 1:22-cv-03898-SEG ) |
| vs. | ) ) **PLAINTIFF'S MEMORANDUM OF** |
| Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Manufacturing Canada, Inc., and Toyota Motor Sales, U.S.A., Inc. | ) **LAW IN OPPOSITION TO DEFEND-** ) **ANTS' MOTION TO DISMISS (ECF** ) **NO. 23)** ) ) |
| Defendants. | ) ) |

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ...................................................................................................1

SUMMARY OF THE ALLEGATIONS .................................................................2

LEGAL STANDARD .............................................................................................4

ARGUMENT ..........................................................................................................5

   I.   THE COMPLAINT ALLEGES MANUFACTURING DEFECTS
   COVERED BY THE NEW VEHICLE LIMITED WARRANTY ........................5

   II.      PLAINTIFF'S CLAIM FOR BREACH OF EXPRESS WARRANTY IS
   PROPERLY PLED ..............................................................................................8

   III.   THE MOTION TO DISMISS COUNT III (BREACH OF IMPLIED
   WARRANTY OF MERCHANTABILITY) MUST BE DENIED ......................12

   IV.    PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM ....................16

   (COUNT VI) IS WELL-PLED............................................................................16

      A.  Count VI Alleges Toyota Fraudulently Omitted Material Information
      About the Defect.................................................................................17

      B.     Plaintiff Alleges Toyota's Affirmative Misrepresentations.....................20

   V.    THE MOTION TO DISMISS PLAINTIFF'S GEORGIA FAIR
   BUSINESS PRACTICES ACT CLAIM MUST BE DENIED...........................23

   VI.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT V) IS WELL-
   PLED IN THE ALTERANTIVE TO COUNT II.................................................24

   VII.     PLAINTIFF HAS STANDING TO SEEK DAMAGES.........................25

CONCLUSION......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Rules**

Fed. R. Civ. P. 8 ................................................................ 6

Fed. R. Civ. P. 8 (d)(2) ..................................................... 7

Fed. R. Civ. P. 9 (b) .................................................... 17, 22

Fed. R. Civ. P. 12 (b)(1) ............................................... 5, 24

Fed. R. Civ. P. 12 (b)(6) .............................................. 8, 19

**Statutes**

Ga. Code Ann. § 11-2-302 ............................................... 11

Ga. Code Ann. § 11-2-719 ............................................ 8, 10

Ga. Code Ann. § 23-2-53 .................................................. 16

**Cases**

*Amin v. Mercedes-Benz USA, L.L.C.*,
   301 F. Supp. 3d 1277 (N.D. Ga. 2018) ...................... *passim*

*Ashcroft v. Iqbal*,
   556 U.S. 662, 678 (2009) ........................................... 4

*Bailey v. Janssen Pharmaceutica, Inc.*,
   288 F. App'x 597–06 (11th Cir. 2008) ............................. 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555 (2007) ........................................ 4, 5

*Bland v. Freightliner L.L.C.*,
   206 F. Supp. 2d 1202 (M.D. Fla. Apr. 15, 2002) ............... 10

*Brignac v. United States*,
   239 F. Supp. 3d 1367 (N.D. Ga. 2017) ....................... 5, 24

*Bussian v. DaimlerChrysler Corp.*,
   411 F. Supp. 2d 614 (M.D.N.C. 2006) ........................... 13

*Callen v. Daimler Ag, Civil Action File No. 1:19-CV-1411-TWT*,

2020 WL 10090879 (N.D. Ga. June 17, 2020) ......................................... *passim*

*Chrysler Corp. v. Wilson Plumbing Co.*,
208 S.E.2d 321 (Ga. Ct. App. 1974) ................................................. 15

*Cline v. Advanced Neuromodulation Sys.*,
17 F. Supp. 3d 1275 (N.D. Ga. 2014) .............................................. 9

*DeLong Equip. Co. v. Wash. Mills Abrasive Co.*,
887 F.2d 1499, 1519–20 (11th Cir. 1989) ....................................... 23

*Duncan v. Nissan N. Am., Inc.*,
305 F. Supp. 3d 311 (D. Mass. 2018) .............................................. 11

*Dye v. Covidien LP*,
470 F. Supp. 3d 1329 (S.D. Fla. 2020) ............................................ 6

*Ed Federkeil Racing, Inc. v. Fires Svc. Plus, No. 3:20-CV-141-TCB*,
2021 WL 2555582 (N.D. Ga. Mar. 17, 2021) .................................. 24

*Falco v. Nissan N. Am. Inc., No. CV 13-00686 DDP MANX*,
2013 WL 5575065 (C.D. Cal. Oct. 10, 2013)(6) ............................. 19

*FindWhat Inv. Grp. v. FindWhat.com*,
658 F.3d 1282 (11th Cir. 2011) ....................................................... 8

*Fla. Action Comm., Inc. v. Seminole Cnty.*,
212 F. Supp. 3d 1213 (M.D. Fla. 2016) ........................................... 8

*Ford Motor Co. v. Gunn*,
181 S.E.2d 694 (Ga. Ct. App. 1971) ................................................ 9

*Francis v. GM, L.L.C.*,
504 F. Supp. 3d 659 (E.D. Mich. 2020) ........................................... 12

*Garcia v. Chrysler Grp. L.L.C.*,
127 F. Supp. 3d 212 (S.D.N.Y. 2015) .............................................. 15

*George v. Jaguar Land Rover N.A., L.L.C*,
2021 WL 5195788 (D.N.J. Nov. 11, 2021) ...................................... 9

*Hemmings v. Camping Time RV Centers, L.L.C., No. 1:17-CV-1331-TWT*,
2017 WL 4552896 (N.D. Ga. Oct. 11, 2017) ................................... 15

*Hines v. Mercedes-Benz USA, L.L.C.*,
   358 F. Supp. 2d 1222 (N.D. Ga. 2005) ............................................................ 13

*Hogan v. BMW of N. Am. LLC, No. C20-0089-RAJ-MAT*,
   2020 WL 5664946 (W.D. Wash.) ...................................................................... 19

*Horne v. Claude Ray Ford Sales, Inc.*,
   290 S.E.2d 497, 499 (Ga. Ct. App. 1982) ........................................................ 12

*Hurry v. Gen. Motors L.L.C., No. 3:21-CV-673-ECM*,
   2022 WL 3587349 (M.D. Ala. Aug. 22, 2022) ................................................ 19

*In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig., No. 1:13-CV-2195-TWT*,
   2018 WL 2765961 (N.D. Ga. June 8, 2018) .................................................16,17

*In re Chevrolet Bolt EV Battery Litig., No. 2:20-CV-13256-TGB-CI*,
   2022 WL 4686974 (E.D. Mich. Sept. 30, 2022) .............................................. 15

*In re GM Air Conditioning Mktg. & Sales Practices Litig.*,
   406 F. Supp. 3d 618 (E.D. Mich. 2019) ........................................................... 17

*In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*,
   711 F. Supp. 2d 1348 (M.D. Ga. 2010) .............................................................. 5

*In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*,
   880 F. Supp. 2d 801 (S.D. Ohio 2012) ............................................................. 11

*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
   534 F. Supp. 3d 1067 (N.D. Cal. 2021) ........................................................... 25

*Johnson v. Jaguar Cars, Inc., No. CIV.A.1:05CV3161-RLV*,
   2006 WL 1627125 (N.D. Ga. June 6, 2006) .................................................... 12

*Lloyd's Syndicate No. 5820 v. AGCO Corp.*,
   756 S.E.2d 520 (Ga. 2014) ................................................................................. 6

*McCabe v. Daimler AG*
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) ..................................................... *passim*

*McDonald v. Mazda Motors of Am., Inc.*,
   603 S.E.2d 456, 460 (Ga. Ct. App. 2004) ....................................................... 11

iii

*McQueen v. Yamaha Motor Corp., U.S.A.*, No. 19-2559
   (DWF/BRT), 2020 U.S. Dist. LEXIS 172407 (D. Minn. Sept. 21, 2020) ........ 11

*Meyer v. Waite*,
   606 S.E.2d 16 (Ga. Ct. App. 2004) .................................................................. 18

*Mgmt. Advisory Servs., Inc. v. Brennan*, No. 4:21-CV-47-TWT,
   2021 WL 5029293 (N.D. Ga. July 27, 2021) ...................................................... 4

*Monopoli v. Mercedes-Benz USA, L.L.C.*, No. 1:21-CV-01353-SDG,
   2022 WL 409484 (N.D. Ga. Feb. 10, 2022) ............................................. *passim*

*Morrison v. TriVita, Inc.*, No. 12-CV-1387 BEN BLM,
   2013 WL 1148070 (S.D. Cal. Mar. 19, 2013) ................................................... 21

*Morrow v. Carter's, Inc.*, No. 1:16-CV-01485-ELR,
   2017 WL 9882667 (N.D. Ga. Mar. 6, 2017) .................................................... 25

*Padilla v. Porsche Cars North Am., Inc.*
   2020 WL 1472301 (S.D. Fla. Mar. 26, 2020) ................................................... 21

*Pinson v. JPMorgan Chase Bank, N.A.*,
   942 F.3d 1200 (11th Cir. 2019) ........................................................................ 25

*Pulmonary Assocs. of Charleston P.L.L.C. v. Greenway Health, L.L.C.*,
   508 F. Supp. 3d 1268 (N.D. Ga. 2020) .......................................................*passim*

*Randall v. Smith*,
   222 S.E.2d 664 (Ga. 1975) ............................................................................... 21

*Reynolds v. FCA US L.L.C.*,
   546 F. Supp. 3d 635 (E.D. Mich. 2021) .................................................... 12, 15

*Scattaglia v. Mercedes-Benz USA, L.L.C.*, No. 221CV12750BRMLDW,
   2021 WL 5918475 (D.N.J. Dec. 15, 2021) ................................................ 14, 15

*Typographical Serv., Inc. v. Itek Corp.*,
   721 F.2d 1317, 1320 (11th Cir. 1983) ............................................................... 9

*WESI, L.L.C. v. Compass Env't, Inc.*,
   509 F. Supp. 2d 1353 (N.D. Ga. 2007) ............................................................ 24

*Wilder v. Lawson*, No. CV

110-109, 2011 WL 3703398 (S.D. Ga. July 26, 2011) ....................................... 8

*Zsa Zsa Jewels, Inc. v. BMW of N. Am., L.L.C.*,
    419 F. Supp. 3d 490 (E.D.N.Y. 2019) ................................................................ 7

## **INTRODUCTION**

Defendant Toyota Motor Corporation ("TMC") and its subsidiaries Toyota Motor North America ("TMNA"), Toyota Motor Manufacturing (Canada) ("TMMC"), and Toyota Motor Sales ("TMS") (together, "Toyota") violated Georgia law when they sold Plaintiff and other purchasers the 2020 Rav4 by concealing a crucial fact: that the Vehicle does not reliably start due to a defect in its electrical system. Toyota argues the Court should rule based on speculation about alternative causes and turn a blind eye to allegations of its faulty installation of ECM components. It asks the Court to hold the Vehicles are merchantable despite that they do not reliably start and when they do, experience debilitating failures in their steering and safety features. Toyota misstates the allegations concerning its public statements, disregards precedents holding sufficient similar allegations that Toyota denies the existence of the Defect, and ignores that the Defect renders the Class Vehicles unable to conform to Toyota's factual representations, on which Plaintiff relied, that the Vehicle reliably starts. Toyota's bid to dismiss the unjust enrichment claim neglects that it can be and is alleged in the alternative to warranty claims. Despite making much ado about Plaintiff's purported sale of his Class Vehicle, Toyota does not dispute that any such sale is irrelevant to his standing to obtain damages. Its Motion should be denied.

1

## SUMMARY OF THE ALLEGATIONS

Defendants TMC and its subsidiaries TMNA, TMMC, and TMS designed, manufactured, marketed, and sold all trim levels of the 2020 Rav4 (the "Class Vehicle") in the United States through their authorized dealerships. Class Action Complaint (ECF No. 1) ¶¶ 35-55. In advertising that uses TMC's trademarks and draws no distinction between these entities, Defendants market the Class Vehicles as safe and—at the very least—equipped to start reliably when the ignition is turned. ¶¶ 56-63. But since at least January of 2019, Defendants have known that none of this is true. ¶ 78. Through numerous sources—including Defendants' pre-release testing, its vaunted "Failure Mode and Effects Analysis" program, and records of customer complaints and sales data—Defendants learned that the Class Vehicles are equipped with electrical system components ("Electronic Control Modules" or "ECMs") that cause the Vehicles' battery to drain in as little as twenty-four hours. ¶¶ 79-104. The Defect leaves passengers stranded without transportation when their car battery dies well within the normal lifecycle as advertised by Defendants.  ¶¶ 61 & 64-78. Worse, the Defect causes cascading failures throughout the Vehicles' other components that rely on the battery when the car is in operation: headlights and taillights dim, windshield wipers fail, the Vehicle's alternator

can break, and even the Vehicles' steering system can malfunction, causing the car to veer off-center. ¶¶ 64-78.

Despite mounting complaints from consumers who have been left stranded, Defendants have done everything in their power to conceal the Defect. ¶¶ 89-104. They have instructed their dealerships to test the Vehicle batteries within 48 hours of delivery to ensure the Defect goes undetected at the point of sale. ¶¶ 85-87. They have issued firmware updates that do not disclose the defective ECMs and fail to remedy its effects. ¶¶ 105-11. Through their dealerships, they offer superficial "fixes" that do not address the cause of the Defect (e.g., by replacing the battery), shift blame to consumers for using their Vehicles in ordinary ways (such as by holding their keys near the Vehicles, by leaving their Vehicle parked for two days, or by driving on "slanted" roads), disclaim that the Defect exists, and attribute it to unrelated components. ¶¶ 29, 31 91, 93-95. Consumers are left to pay for replacement batteries, auxiliary charges, substitute transportation, and other costs of owning a Vehicle that does not reliably start and jeopardizes their safety when it does. ¶¶ 11, 12, 165.

Plaintiff McClure bought his Class Vehicle after being exposed "on at least seven-hundred discrete occasions" to Toyota's advertisements containing promises that are "similar or identical to" the following: "When it's time to get away, RAV4

3

is ready to help you take on any trip;" that the Vehicles were "uncompromisingly prepared for [their] role as the ultimate driver companion day in, day out;" and "Once inside, just press the Push Button Start and you're ready to go." ¶¶ 60, 62, 25. The advertised safety and reliability of the Class Vehicles "were among the principal considerations that led Plaintiff McClure to buy the Class Vehicles from Defendants." ¶ 25. But once he owned the Vehicle, Plaintiff McClure found it would *not* start when the button was pushed, it drifted dangerously between lanes, its headlights and taillights malfunctioned, and its reverse camera would not display correctly. ¶¶ 26-31. When Plaintiff McClure brought his Vehicle to Toyota, Toyota disclaimed the Defect, refused to honor its warranty by repairing it, and attempted to blame *Plaintiff*. ¶ 28-34. Plaintiff paid out-of-pocket costs and more for the Vehicle than he would have had he known of the Defect. ¶¶ 33-34.

## LEGAL STANDARD

"In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff." *Mgmt. Advisory Servs., Inc. v. Brennan*, No. 4:21-CV-47-TWT, 2021 WL 5029293, at *1 (N.D. Ga. July 27, 2021). "A claim is plausible where the plaintiff alleges factual content that 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Amin v. Mercedes-Benz USA, L.L.C.*, 301 F.

4

Supp. 3d 1277, 1283 (N.D. Ga. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A plaintiff is not required to provide 'detailed factual allegations' to survive dismissal[.]" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may survive a motion to dismiss for failure to state a claim even if it is "improbable" that a plaintiff would be able to prove those facts and even if the possibility of recovery is extremely remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court "should dismiss a complaint under Rule 12(b)(1) only where it lacks jurisdiction over the subject matter of the dispute." *Brignac v. United States*, 239 F. Supp. 3d 1367, 1372 (N.D. Ga. 2017).

## **ARGUMENT**

## I.   **THE COMPLAINT ALLEGES MANUFACTURING DEFECTS COVERED BY THE NEW VEHICLE LIMITED WARRANTY**

Toyota argues the Complaint alleges *only* design defects. Def. Br. at 9. But as Toyota concedes,[1] a complaint alleges manufacturing defects where it "suggests a deviation from the intended design during the manufacturing process." *Callen v. Daimler Ag*, Civil Action File No. 1:19-CV-1411-TWT, 2020 WL 10090879, at *7 (N.D. Ga. June 17, 2020). Plaintiff meets that standard by alleging,

> **ECMs are designed to work together**, and are referred to collectively as the vehicle's "computer." **In a vehicle that is free of**

---

[1] Br. at 10. *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, 711 F. Supp. 2d 1348, 1365 (M.D. Ga. 2010) denied summary judgment to defendants because the product did not conform to design.

**defects, the ECMs operate in tandem with each other to coordinate the vehicles' electrical systems and to regulate the flow of energy from the battery**. **If the ECMs are improperly** designed, manufactured, or **installed in a vehicle**, **they and the subsystems they govern will cause "parasitic drain,"** meaning that they will draw upon the battery at an excessive rate, causing the battery to lose charge prematurely and one or more of the systems that depend on the battery to fail. **In addition to the ECMs**, faulty wiring, **poor installation,** and defective fuses within the vehicle's electrical subsystems **also cause or contribute to parasitic drain. A**ll are defects introduced by the designer **and/or manufacturer**.

¶ 68. Plaintiff alleges that the Defect stems from the "**installation**" of the Vehicle components ("ECMs") responsible for the Defect. ¶¶ 68, 69, 159, 178, 197, *passim..* Plaintiff sues TMC and TMNA, as well as TMMC—the manufacturer that built the Vehicle Plaintiff bought—for manufacturing the Class Vehicles with the Defect. ¶¶ 35-45 & 52.[2] The improper installation of the ECM components is a warranty-covered defect "in materials or workmanship." *See Callen*, 2020 WL 10090879, at *7 (holding that "improper application of ultraviolet light protectant" alleged "a defect in 'the material or workmanship' covered by vehicle warranty).

Toyota complains that Plaintiff alleges manufacturing defects in the alternative to design defects. Br. at 9. But alternative pleading of design and

---

[2] The Plaintiffs conceded they did not allege manufacturing defects, and the court's holdings were limited to whether the warranty *could be construed to apply to* design defects. *See Amin*, 301 F. Supp. 3d at 1286-87; *Lloyd's Syndicate No. 5820 v. AGCO Corp.*, 756 S.E.2d 520, 524 (Ga. 2014).

manufacturing defects is permissible under Rule 8. *See Bailey v. Janssen Pharma-ceutica, Inc.*, 288 F. App'x 597, 605–06 (11th Cir. 2008) (reversing dismissal of complaint for failure to distinguish between manufacturing and design defects be-cause "[i]t is difficult for a plaintiff at this stage in the litigation to know the source of the defect that was responsible for the harm caused"); *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1337 (S.D. Fla. 2020) ("Rule 8(d)(2) of the Federal Rules of Civil Procedure permits pleading in the alternative and it is difficult for a plaintiff to determine, at this stage of the proceedings, whether the defect 'occurred in the assembly line as opposed to an overall design defect.'"). There is no auto-defect-case exception. *See Callen*, 2020 WL 10090879, at *7 (denying motion to dismiss warranty claims where Plaintiff alleged "that the defect . . . was caused either by [a design or manufacturing error]" (emphasis added)); *Zsa Zsa Jewels, Inc. v. BMW of N. Am., L.L.C.*, 419 F. Supp. 3d 490, 506 (E.D.N.Y. 2019) ("A plaintiff is enti-tled to plead claims for both design defect and manufacturing defect in the alterna-tive.") (quotation marks omitted)).

Toyota's insistence that the Complaint alleges ***only*** design defects because it alleges the Defect is present in all of the Class Vehicles is a non-sequitur. Br at 9-10. There is no rule of law that a manufacturing defect cannot occur across an en-tire product line. *See Callen*, 2020 WL 10090879, at *7 (rejecting "the proposition

7

that a manufacturing defect becomes a design defect if it is replicated across an entire product line"). Plaintiff alleges that the same Defendants manufactured all of the 2020 Rav4s, and that the Defect arises from their installation and integration of ECMs with the Vehicle's electrical subsystems, resulting in their failure "to operate in tandem with each other," contrary to design. ¶¶ 35, 37-45, 54, 68. Toyota's invitation to read these allegations in conflict fails to construe "the reasonable inferences . . . in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011).

## II.   PLAINTIFF'S CLAIM FOR BREACH OF EXPRESS WARRANTY IS PROPERLY PLED

Toyota next argues that the Court should dismiss one form of remedy (damages). But Rule 12(b)(6) allows dismissal only for "failure to **state a claim** on which relief can be granted."[3] "The demand for relief is not part of the plaintiff's claim[.]" *Wilder v. Lawson*, No. CV 110-109, 2011 WL 3703398, at *4 (S.D. Ga. July 26, 2011). "[O]nly claims for relief are subject to dismissal, not the relief itself.'" *Fla. Action Comm., Inc. v. Seminole Cnty.*, 212 F. Supp. 3d 1213, 1229 (M.D. Fla. 2016) (citing *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002)). The claim pled in Count II is for breach of express warranty, not "for damages."

---

[3] Fed. R. Civ. P. 12(b)(6) (emphasis added).

8

Moreover, "[w]hether a remedy fails of its essential purpose is generally a question of fact for summary judgment or at trial." *Pulmonary Assocs. of Charleston P.L.L.C. v. Greenway Health, L.L.C.*, 508 F. Supp. 3d 1268, 1276 (N.D. Ga. 2020).

Even if properly raised by a Rule 12(b)(6) motion, limitation of remedy in an express warranty provision is unenforceable "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose[.]" Ga. Code Ann. § 11-2-719. As a matter of Georgia law, "'[a] repair-or-replace warranty fails of its essential purpose if the warrantor does not successfully repair defects within a reasonable time or within a reasonable number of attempts.'" *Pulmonary Assocs. of Charleston P.L.L.C.*, 508 F. Supp. 3d at 1276 (quoting *Typographical Serv., Inc. v. Itek Corp.*, 721 F.2d 1317, 1320 (11th Cir. 1983) (holding same under identical UCC provision)).[4]

Plaintiff alleges that he presented his Vehicle to Toyota ***four times.*** Each time, Toyota failed to identify or repair the Defect. ¶¶ 28-32. Toyota has ***never*** adopted an effective repair for the Defect. ¶¶ 111 & 190. "Plaintiff[] allege[s]—in considerable detail—*numerous* failed efforts by [Toyota] to repair the errors in [the

---

[4] *Cf. Ford Motor Co. v. Gunn*, 181 S.E.2d 694, 696 (Ga. Ct. App. 1971) ("lack of success in the attempts to remedy" a defective automobile "would constitute a breach of warranty"); *accord, e.g.*, *George v. Jaguar Land Rover N.A., L.L.C,* 2021 WL 5195788, at *6 (D.N.J. Nov. 11, 2021).

Class Vehicles]. This is sufficient at the pleading stage to show a failure of the re-pair-or-replace warranty's essential purpose." *Pulmonary Assocs. of Charleston P.L.L.C.*, 508 F. Supp. 3d at 1276. Further, Plaintiff alleges that he suffered dam-ages resulting from the failure of the express warranty, in the form of towing costs, the costs of auxiliary electrical equipment, and the cost of repair attempts that he not have incurred had Toyota honored the repair warranty. ¶¶ 28-34; *see Cline v. Advanced Neuromodulation Sys.*, 17 F. Supp. 3d 1275, 1281 (N.D. Ga. 2014) (holding that where complaint alleged "costs that were proximately caused by the [product] failure, Plaintiff has adequately pled damages arising out of Defendant's alleged breach of express warranty based on the Limited Warranty"); *Bland v. Freightliner L.L.C.*, 206 F. Supp. 2d 1202, 1211 (M.D. Fla. Apr. 15, 2002)(dam-ages from warranty violation sufficiently alleged where the "Vehicle suffered con-tinuous defects, the [repair] remedy flew out the window," and "the [plaintiffs] al-lege the breach resulted in costs to repair the vehicle").

Toyota's gloss on the Complaint that "the warranty is unconscionable be-cause TMS knew the . . . Defect might manifest outside the warranty period" ig-nores that Ga. Code Ann. § 11-2-719 invalidates the NVLW's limitation of reme-dies regardless of whether they are unconscionable. *See Pulmonary Assocs. of Charleston P.L.L.C.*, 508 F. Supp. 3d at 1276 (denying motion to dismiss

10

"damages" remedy for breach of express warranty based on UCC provision and holding that "plaintiffs need only plead that the limited remedies fail of their essential purpose to survive a motion"). Even so, Plaintiff alleges that Toyota drafted the warranty to limit its liability to "repair" of a defect knowing that the warranty could ***never*** be honored because it knew the Defect was irreparable. ¶¶ 119 & 190.[5] Further, he alleges that Toyota instructed its dealership to perform short-term battery checks to prevent purchasers from detecting the battery failures caused by the Defect. ¶¶ 85-86. Because Plaintiff has made a prima facie showing of unconscionability, the Court should defer determination on unconscionability under Ga. Code Ann. § 11-2-302(2) "until the parties have had the opportunity to submit evidence regarding the disclaimer's commercial setting, purpose, and effect." *See McQueen v. Yamaha Motor Corp., U.S.A.*, No. 19-2559 (DWF/BRT), 2020 U.S. Dist. LEXIS 172407, at *28 (D. Minn. Sept. 21, 2020) (addressing equivalent UCC provision); *Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 320 (D. Mass. 2018) (denying motion to dismiss "[i]n light of the UCC's instruction"); *In re Porsche Cars N. Am., Inc. Plastic Coolant Tubes Prods. Liab. Litig.*, 880 F. Supp. 2d 801, 822 n.6

---

[5] In *McCabe v. Daimler AG*, the plaintiff did not allege the manufacturer knew that the warranty could *never* be honored. 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013).

(S.D. Ohio 2012) ("The UCC expressly requires that courts not make substantive findings of unconscionability at the motion to dismiss stage").

## III.   THE MOTION TO DISMISS COUNT III (BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY) MUST BE DENIED

Toyota argues that Count II must be dismissed because it infers that Plaintiff has driven his Vehicle without the Defect manifesting. Br. 12-13. But abandonment of the Vehicle by Plaintiff is not required: "'to be merchantable,' goods must: '(a) Pass without objection in the trade under the contract description; and ... (c) [be] fit for the ordinary purposes for which such goods are used . . . .'" *Amin*, 301 F. Supp. 3d at 1287 (quoting *McDonald v. Mazda Motors of Am., Inc.*, 603 S.E.2d 456, 460 (Ga. Ct. App. 2004)). In the context of automobile defects, cars are not "fit for their ordinary purpose" where the defect affects "their 'driveability or usefulness[.]'" *Id.* (quoting *Horne v. Claude Ray Ford Sales, Inc.*, 290 S.E.2d 497, 499 (Ga. Ct. App. 1982)). In *Amin*, a defect in the subject vehicles' air conditioner violated the warranty of merchantability. *Id.* at 1288. The court did not cite—let alone require—allegations that the defect had caused the plaintiffs to abandon the use of their cars. *See id.* at 1227-28 (reciting allegations without mention of discontinued used); *accord*, *Johnson v. Jaguar Cars, Inc.*, No. CIV.A.1:05CV3161-RLV, 2006 WL 1627125, at *1, *4 (N.D. Ga. June 6, 2006) (violation of implied warranty of merchantability sufficiently alleged by brake defect, notwithstanding that

12

plaintiff did not allege that he discontinued use of the vehicle). This District's holdings are in line with others', which "reject the notion that a vehicle is fit for its ordinary purpose merely because it provides transportation from point A to point B . . . In contrast, courts have recognized that vehicles may be unmerchantable even if they can be used to provide basic transportation when a defect presents symptoms in a persistent manner that can be said to impair safety, reliability, or operability over an extended period of time." *Francis v. GM, L.L.C.*, 504 F. Supp. 3d 659, 676 (E.D. Mich. 2020); *see, Reynolds v. FCA US L.L.C.*, 546 F. Supp. 3d 635, 651 (E.D. Mich. 2021) (whether plaintiff "continues to drive their vehicle . . . is not a bright-line rule").

Here, Plaintiff alleges that the Defect caused his Vehicle to fail to start twice,[6] with new (and different) batteries installed and with all user-operated systems turned off, within the first nine months after buying the Vehicle from Toyota. ¶¶ 22, 28-34. Plaintiff also alleges that the Defect poses an obvious risk of stranding the driver, that he personally has incurred $546 in out-of-pocket expenses

---

[6] *Contrast Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623-24 (M.D.N.C. 2006) ("Plaintiff does not allege that his Durango was ever rendered inoperable") & *Hines v. Mercedes-Benz USA, L.L.C.*, 358 F. Supp. 2d 1222, 1229 (N.D. Ga. 2005) (on summary judgment, holding plaintiff "d[id] not allege that the vehicle was ever rendered inoperable").

including substitute transportation when his Vehicle did not start, and cites to consumer complaints reporting other owners were stranded. *Id.* ¶¶ 63, 76, 105; *see also id.* 91 p. 48 ("Car battery completely drained after not being driven for 24 hours leaving me stranded."); ¶ 91 p. 48  ("Battery totally drained. Left stranded without vehicle use."); ¶ 94 p. 54 ("My 2020 Rav4 Limited left me stranded with a dead battery yesterday . . . ."). Another court has rejected the argument that implied warranty of merchantability "claims should also be dismissed because [the plaintiff] does not allege he has stopped using his vehicle for transportation" where the plaintiff alleged that defects in a vehicle's electrical system "cause a 'no-start' problem, which requires the vehicles to be towed for repairs and renders them unreliable because Plaintiffs may be in a situation where the vehicle fails to start and leaves the Plaintiffs stranded." *Scattaglia v. Mercedes-Benz USA, L.L.C.*, No. 221CV12750BRMLDW, 2021 WL 5918475, at *11-12 (D.N.J. Dec. 15, 2021). The Defect causing the Vehicles to fail to reliably start, leaving its operator at risk of being stranded, impacts its "driveability or usefulness." *Amin*, 301 F. Supp. 3d at 1287. If abandonment were required, purchasers have replaced their Class Vehicles because of the Defect. ¶ 94 p. 53 ("I got a new car so I can depend on it not to leave me stranded . . . .").

14

In addition, Plaintiff alleges that the Defect resulted in Plaintiff's loss of control of his Vehicle. ¶¶ 28, 29, 31-32. Toyota finds it significant that Plaintiff has not alleged a dealership attributed the steering drift to the Defect. Br. at 13. But the Complaint pleads the connection. ¶¶ 66, 75. Toyota "admit[s]" to NHTSA "that battery depletion causes the steering system on a Class Vehicle to lose calibration, which causes the steering wheel to pull or drift to one side while driving." ¶ 77.

Toyota questions whether the Complaint alleges that the Defect can cause the Vehicle to fail to start "in the midst of traffic." Br. at 13. But Toyota ignores that the Defect "can also cause the engine to stall while the vehicle is in operation by putting excessive strain on the alternator, which can prevent the vehicle from moving forward to avoid being rammed from behind or obstructing traffic." ¶ 76; *Id.* ¶ 74. Because the Defect depletes the battery, it can cause additional safety features that draw power from the battery while the engine is running to fail, including headlights, taillights, hazard lights, and windshield wipers, which Plaintiff experienced. ¶¶ 65, 73, 76. Courts hold equivalent allegations state violations of the implied merchantability warranty. *See Scattaglia*, 2021 WL 5918475, at *11-12 (holding electrical system defect that causes the vehicle to fail to start violated UCC implied warranty provision).

15

Finally, Toyota claims the Complaint inadequately alleges "privity" because Plaintiff "did not directly purchase the vehicle from Defendants." Br at 13. But under Georgia law, privity exists where a plaintiff buys a used vehicle from an authorized dealership and the warranty runs to subsequent purchasers. *Reynolds*, 546 F. Supp. 3d at 652 ("Because [plaintiff] purchased her second-hand vehicle directly from a dealership as opposed to an original purchaser, the fact that her vehicle was used is irrelevant. . .  Accordingly, Hancock is in privity with Defendant and her implied warranty claim will not be dismissed on this basis." (citing *McCabe*, 948 F. Supp. 2d at 1362 n.5).[7] Plaintiff bought his Vehicle from an authorized Toyota dealership. ¶ 23. Toyota's NVLW provides that "[w]arranty coverage is automatically transferred at no cost to subsequent vehicle owners." ¶¶ 114. Alternatively, Defendants do not contest that Plaintiff alleges an agency relationship between Toyota and its dealerships. *See* ¶¶ 35-55. The agency relationship suffices. *Amin v. Mercedes-Benz USA, L.L.C.*, 349 F. Supp. 3d 1338, 1356-58 (N.D. Ga. 2018).

## IV.   PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM (COUNT VI) IS WELL-PLED

---

[7] *See also Hemmings v. Camping Time RV Centers, L.L.C.*, No. 1:17-CV-1331-TWT, 2017 WL 4552896, at *6 (N.D. Ga. Oct. 11, 2017); *Chrysler Corp. v. Wilson Plumbing Co.*, 208 S.E.2d 321 (Ga. Ct. App. 1974) ("[W]here an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale[,] a warranty by the manufacturer running to the purchaser, privity exists.").

**A.    Count VI Alleges Toyota Fraudulently Omitted Material Infor-
mation About the Defect**

Toyota insists the Complaint does not allege "active concealment" or "supe-
rior knowledge."[8] But it ignores that disclosure of a defect is required "where there
is a concealment of 'intrinsic qualities of the article which the other party by the
exercise of ordinary prudence and caution could not discover.'" *Amin*, 301 F.
Supp. 3d at 1296 (quoting Ga. Code Ann. § 23-2-53).[9] Plaintiff alleges that Toyota
knew about the Defect since at least January of 2019, refused to disclose the Defect
at the time of purchase or when Plaintiff and the Class presented their Vehicles for
repair,[10] actively concealed the Defect including through advertising and public
statements that conceal the Defect's nature and severity,[11] that the Defect is mate-
rial, and that Toyota did not disclose the Defect to Plaintiff.[12]  No more is required.
*See id.* at 1296 (fraudulent concealment by omission adequately pled where
"[p]laintiffs have alleged that (1) Mercedes knew about the defect as early as 2008;

---

[8] No affirmative misrepresentation is required. *See Amin*, 301 F. Supp. 3d at 1296
(holding this element satisfied by an "omission of a material fact" regardless of
whether there is a "false representation").

[9] *In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, No. 1:13-CV-2195-
TWT, 2018 WL 2765961, at *10 (N.D. Ga. June 8, 2018) the defendant "never had
any form of direct communication or contact with the [plaintiff]."

[10] Compl. ¶¶ 8-12, 28-31, 116-18, & ¶¶ 79-104.

[11] *Id.* ¶¶ 8-12, 31, 34, 56-63, 106-111, 116-18.

[12] *Id.* ¶¶ 13, 33-34, & 26.

(2) Mercedes denied the existence of the defect when confronted about it by con-

sumers; and (3) Mercedes actively concealed this defect").[13]

Toyota speculates that Plaintiff could have discovered the Defect through in-

ternet research. Br. at 19 & 21. But Plaintiff alleges that even an ***independent me-***

***chanic*** could not identify the Defect when Plaintiff brought his Vehicle for repair.

*Id.* ¶ 28. The ECM components that are the source of the Defect are internal com-

ponents of the Vehicle's electrical system. ¶¶ 64, 67-69. Similar to other cases, the

Defect originates in an "'intrinsic quality' that could not have been discovered

through the exercise of ordinary prudence and caution." *McCabe*, 948 F. Supp. 2d

at 1368 (no lack of ordinary prudence in failure to discover defects in "evaporation

tubes in [vehicles'] gasoline tanks); *accord Monopoli*, 2022 WL 409484 at *1 &

11 (no lack of diligence in failure to detect defect in plastic pin inside headrests);

*Amin*, 301 F. Supp. 3d at 1290-91 & 1296 (no lack of diligence in failure to detect

defect in air-conditioning drainage system). Plaintiff also alleges that Toyota

gained knowledge of the Defect through its pre-release tests and warranty claims

information. *Id.* ¶¶ 79-84. Toyota does not claim that it puts these online. Br. at

---

[13] *Accord*, *Rosen v. Mercedes-Benz USA, LLC*, No. 1:21-cv-00787-WMR, *12-13
(N.D. Ga. Nov. 1, 2022); *In re GM Air Conditioning Mktg. & Sales Practices
Litig., 406* F. Supp. 3d 618, 638 (E.D. Mich. 2019); *Monopoli v. Mercedes-Benz
USA, L.L.C.*, No. 1:21-CV-01353-SDG, 2022 WL 409484, at *8-12 (N.D. Ga. Feb.
10, 2022); *McCabe*, 948 F. Supp. 2d at 1368.

19-20.[14] And while Toyota attempts to minimize its misleading advertising claims as "puffery," similar advertising has been held to be evidence of a car-maker's concealment of a defect. *See Amin*, 301 F. Supp. 3d at 1290-91 (noting advertising claims as corroborative of concealment).

Toyota cites the "Tech Tips" and a Technical Service Bulletin ("TSB"), but neither "Tech Tips" nor the "TSBs," let alone the customer complaints, discloses that the Class Vehicles "contain ECMs and associated electrical subsystems that cause parasitic drain[.]" ¶ 69. Rather, they misleadingly assure that the effects of the Defect (such as steering drift and battery drain) can be repaired or mitigated when they cannot. ¶¶ 85-86, 108-17. Far from providing "an opportunity to learn about the [] Defect," Br. at 20, these documents conceal it and downplay the severity of its effects. *See Hurry v. Gen. Motors L.L.C.*, No. 3:21-CV-673-ECM, 2022 WL 3587349, at *10 (M.D. Ala. Aug. 22, 2022) (fraudulent concealment pled by allegations that GM "issu[ed] the TSBs which instructed dealers to offer repairs that GM knew would not cure the Oil Consumption Defect"); *Hogan v. BMW of N. Am. LLC,* No. C20-0089-RAJ-MAT, 2020 WL 5664946, at *1 (W.D. Wash.), *adopted*, 2020 WL 5659511 (W.D. Wash. Sept. 23, 2020) (fraudulent concealment

---

[14] In *Meyer v. Waite*, the defect was disclosed in materials provided to the plaintiffs and which "[they] could have obtained." 606 S.E.2d 16, 20 (Ga. Ct. App. 2004).

adequately pled where "rather than disclosing the defect to plaintiff and other consumers and providing for repair, BMW issued technical service bulletins ("TSBs") to address" the effects of the Defect).[15]

Toyota claims Plaintiff fails to allege "reliance." Br. at 20-21. However, "to show justifiable reliance on an *omission*[,] [i]t is enough for plaintiffs to allege that a fact was material and that it could have, and should have, been disclosed prior to the time plaintiffs acted upon the omission." *Monopoli*, 2022 WL 409484, at \*10 (citing *Amin* 301 F. Supp. 3d at 1296 & *McCabe*, 948 F. Supp. 3d at 1368). A plaintiff proceeding under an omission theory need only allege the defendant's knowledge of the defect and "that they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect." *McCabe*, 948 F.2d at 1368. Plaintiff alleges the same. Compl. ¶¶ 26 & 34, 79-111.

### B.   Plaintiff Alleges Toyota's Affirmative Misrepresentations

Toyota's contention that Plaintiff does not allege "actual misrepresentation" misstates the allegations. To allege affirmative misrepresentations, Plaintiff "'must

---

[15] Toyota presumes the TSB and "Tech Tip" were publicly available at the time of Plaintiff's purchase—a fact that is not alleged. *See Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP MANX, 2013 WL 5575065, at \*8 (C.D. Cal. Oct. 10, 2013); *see, e.g.*, ¶ 108 n.17 (document accessed in 2022).

allege with particularity the 'time, place, and substance' of the Defendants' representations.'" *Callen*, 2020 WL 10090879, at *17 (citing *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)). *Callen denied* the motion to dismiss, holding this standard was met by allegations of statements from which "a consumer . . . could reasonably infer that the Defendants would not clear a Class Vehicle for sale with a known defect." *Id.* In addition, the plaintiffs "specif[ied] where the[y] saw these statements, what the statements contained, and how they affected the Plaintiffs' purchasing decisions." *Id.*

Plaintiff alleges he was "exposed . . .on at least seven-hundred discrete occasions" to representations by Defendants that are "similar or identical to" the following: "When it's time to get away, Rav4 is ready to help you take any trip," "that the Class Vehicles were 'uncompromisingly prepared for [their] role as the ultimate driver companion day in, day out.," and, "Once inside, just press the Push Button Start and you're ready to go." ¶¶ 25, 60-62. As in *Callen*, a consumer could reasonably infer from statements such as "just press the Push Button Start and you're ready to go" that "the Defendants would not clear a Class Vehicle for sale with a known defect" in its electrical system that causes the Vehicle to *fail to turn on* when that button is pushed. *Callen*, 2020 WL 10090879 at *18. The statement is materially *false. Randall v. Smith*, 222 S.E.2d 664, 666 (Ga. 1975)(holding

21

opinions are non-actionable, in contrast to facts). He further alleges that these advertisements by Toyota were displayed on his internet browser "virtually every time he opened [it] for two years," and that they were material. ¶¶ 24-25 & 62.[16]

Toyota claims the Complaint "omits what specific information, if any, Plaintiff actually viewed pre-purchase." Br at 15. But Plaintiff alleges that the advertisements he viewed were "similar or identical" to the examples given and to a specific ad that he viewed. ¶¶ 24-25, 60-62. Fraud Plaintiffs may rely on exemplary advertisements to satisfy Rule 9(b). *See, e.g.*, *Morrison v. TriVita, Inc.*, No. 12-CV-1387 BEN BLM, 2013 WL 1148070, at *5 (S.D. Cal. Mar. 19, 2013) ("By identifying a clear common message in the advertising campaign and identifying numerous examples that repeat this message, plaintiffs have adequately notified defendants of the 'who, what, when, where and how of the misconduct charged." (quotation marks omitted)). Toyota faults Plaintiff for purportedly failing to identify "who produced and distributed" these statements. But Plaintiff identifies specific advertisements bearing Toyota's trademarks. ¶¶ 58-60. Toyota complains that Plaintiff does not trace each advertisement to one of the individual defendants. Br. at 16.

---

[16] In the portion of *Callen* Toyota cites, the plaintiffs "d[id] not provide specific examples of advertisements containing these marketing statements." *Callen*, 2020 WL 10090879, at *17. *Padilla v. Porsche Cars North Am., Inc.* refused to toll the statute of limitations based on statements that did not contain the misrepresentation. 2020 WL 1472301, *4 (S.D. Fla. Mar. 26, 2020).

But Plaintiff alleges TMC has licensed its trademarks to the other Defendants, that

TMC, TMNA, and TMS fail to distinguish among themselves and their dealerships

in their advertising, and that the Defendants "jointly supervise . . . and exercise

control over the advertising . . . of 'Toyota' and 'Lexus' brand vehicles.'" ¶¶ 42(a)-

(d), 44-47. "[T]he Complaint is not procedurally deficient" because "the grouping

together of [Defendants] can be fairly read to allege that [they], collectively, are . .

. responsible for the conduct alleged[.]" *Amin*, 349 F. Supp. 3d at 1353.

## V.   THE MOTION TO DISMISS PLAINTIFF'S GEORGIA FAIR BUSI-NESS PRACTICES ACT CLAIM MUST BE DENIED

Toyota asserts the Complaint does not allege reliance. Br. at 22. But Plaintiff

alleges "that [Toyota] knew of but failed to disclose a material defect in the Class

Vehicles" and "that in an effort to address the defect, they "repeatedly confronted

[Toyota] with the apparent falsity of its representations, and [Toyota] repeatedly

confirmed its original statement, asserting special knowledge." *Amin*, 301 F. Supp.

3d at 1291 (quoting *DeLong Equip. Co. v. Wash. Mills Abrasive Co.*, 887 F.2d

1499, 1519–20 (11th Cir. 1989))." In particular, Plaintiff alleges that Toyota knew

about the Defect since at least January of 2019, refused to disclose the Defect at

the time of purchase or when Plaintiff and the Class presented their Vehicles for

repair, actively concealed the Defect including through advertising and public

statements that conceal the Defect's nature and severity, and that Toyota did not

disclose the Defect to Plaintiff.[17] These allegations are sufficient to plead justifiable reliance on omissions, as explained in IV.A, *supra. See Id.* (holding similar allegations sufficient to "allege[] that Mercedes knew of but failed to disclose a material defect" under GFBPA). Toyota's clam that "Plaintiff has failed to identify any specific representation" ignores that Plaintiff has alleged specific misrepresentations on which he relied. *See* Part IV.B. Accordingly, Count I also pleads reliance under a misrepresentation theory.

## VI.   PLAINTIFF'S UNJUST ENRICHMENT CLAIM (COUNT V) IS WELL-PLED IN THE ALTERANTIVE TO COUNT II

Toyota argues that Count V must be dismissed because the first paragraph of that Count "incorporates by reference" preceding allegations. Br. at 23. But "incorporation of contract allegations into an unjust enrichment claim is not fatal[.]" *Ed Federkeil Racing, Inc. v. Fires Svc. Plus*, 2021 WL 2555582, at *7 (N.D. Ga. Mar. 17, 2021) (collecting cases). In *Hadjian v. Mercedes-Benz, USA, L.L.C.*, the unjust enrichment claim was not pled in the alternative to the breach of warranty claim.[18] In contrast, Count V is alleged "**in the Alternative to Count II**." Compl. p. 91. This District allows both claims to go forward on the basis of similar pleadings.

---

[17] ¶¶ 8-12, 26, 28-31, 34, 56-63, 79-104 106-111, 116-18.
[18] Amend. Compl. (ECF No. 41), No. 1:21-CV-00469-SCJ, 2022 WL 3699603 (N.D. Ga. April 15, 2021) ¶¶ 101-12 & 179-86.

*See Federkeil Racing*, 2021 WL 2555582 at *7 (denying motion to dismiss where the "unjust enrichment count incorporates by reference all the preceding factual allegations of the complaint" where the plaintiff "presents the breach of contract and unjust enrichment claims as separate counts and not within a single count").

## VII.   PLAINTIFF HAS STANDING TO SEEK DAMAGES

The Court "should dismiss a complaint under Rule 12(b)(1) only where it lacks jurisdiction over the subject matter of the dispute." *Brignac*, 239 F. Supp. 3d at 1372. Plaintiff undisputedly has standing to seek damages. Def. Br. at 24-25; *compare*, Compl. ¶¶ 33-34; *with, Morrow v. Carter's, Inc.*, 2017 WL 9882667, *3 (N.D. Ga. Mar. 6, 2017),*and Pinson v. JPMorgan Chase Bank, N.A.*, 942 F.3d 1200, 1207 (11th Cir. 2019) (out-of-pocket losses sufficient for standing). Toyota concedes that Plaintiff's "interest or intention to purchase another [Class Vehicle]" is relevant. Br. at 24. Plaintiff requests leave to amend to allege his interest in purchasing the Class Vehicle, if the Defect (or an adequate repair program) is repaired. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1123 (N.D. Cal. 2021) (granting leave to amend these allegations).

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied.

Dated: January 19, 2023

Respectfully submitted,
*/s/ Matthew A. Smith*

Matthew A. Smith, Esq.
(*Pro Hac Vice*), CA Bar # 309392
**MIGLIACCIO & RATHOD LLP**
201 Spear St., Ste 1100
San Francisco, CA 94105
(831) 687-8255 (Tel.)
msmith@classlawdc.com

Nicholas A. Migliaccio, Esq.,
(*Pro Hac Vice)* Bar No. 484366
Jason S. Rathod, Esq.
(*Pro Hac Vice)* Bar No. 1000882
412 H St., NE, Suite 302
Washington, DC 20002
(202) 470-3520 (Tel.)
(202) 800-2730 (Fax)
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

**CARROLL LAW FIRM LLC**

*/s/ Stacey A. Carroll*
Stacey A. Carroll
Georgia Bar No. 112730
295 W. Crossville Rd., Suite 730
Roswell, GA 30075
Phone: (404) 816-4555
Fax: (404) 481-2074
stacey@carroll-firm.com

26

**CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE**

**WITH LOCAL RULE 5.1**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system (which document was prepared in Times New Roman font, 14-point type, one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C)), which will provide electronic notice to all counsel of record.

Respectfully submitted,

*/s/ Matthew A. Smith*
Matthew A. Smith
(*Pro Hac Vice*), CA Bar No. 309392
201 Spear St., Ste 1100
San Francisco, CA 94105
(831) 687-8255 (Tel.)
msmith@classlawdc.com

27